NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

MARK ANTHONY LUCAS, *Appellant*.

No. 1 CA-CR 13-0215
FILED 3-20-2014

---

Appeal from the Superior Court in Mohave County
No.   S8015CR201200025
The Honorable Steven F. Conn, Judge

**AFFIRMED IN PART; VACATED IN PART**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Craig W. Soland
*Counsel for Appellee*


Mohave County Legal Defender's Office, Kingman
By Diane S. McCoy
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge John C. Gemmill joined.

---

**H O W E,** Judge:

**¶1** Mark Anthony Lucas appeals his convictions and sentences for two counts of sexual conduct with a minor, two counts of transferring dangerous drugs, and two counts of involving a minor in drug offenses. He raises several issues on appeal, all but one of which we resolve in this memorandum decision. We resolve his claim that he was entitled to interview the victim's grandmother before trial in a separate opinion pursuant to Arizona Rule of Criminal Procedure 31.26.

**¶2** Lucas's convictions stem from two incidents in which Lucas provided methamphetamine and engaged in sex acts with a developmentally challenged teenage victim. Because the convictions for involving or using a minor in a drug transaction and transfer of dangerous drugs are based on the charged same acts and therefore violate the prohibition against double jeopardy, we vacate the convictions and resulting sentences imposed on the two counts of involving or using a minor in a drug transaction. Finding no other error, we affirm the remaining convictions and sentences.

**DISCUSSION**

*A. Voluntariness*

**¶3** When a police detective interviewed Lucas about the victim's allegations, Lucas admitted to smoking methamphetamine and engaging in sex acts with the victim. Lucas argues that the trial court erred in denying his motion to suppress his statements as involuntary. We review a trial court's determination of voluntariness for clear and manifest error. *State v. Blakely*, 204 Ariz. 429, 436 ¶ 26, 65 P.3d 77, 84 (2003).

**¶4** A defendant's statements to police are admissible if they are voluntary and not obtained by coercion or improper inducement. *Haynes v. Washington*, 373 U.S. 503, 513 (1963). "In assessing voluntariness, we consider the totality of circumstances to determine whether the statements were or were not the product of a 'rational intellect and a free will.'" *State*

*v. Hoskins*, 199 Ariz. 127, 137 ¶ 28, 14 P.3d 997, 1007 (2000) (quoting *Mincey v. Arizona*, 437 U.S. 385, 398 (1978)); *see also Colorado v. Connelly*, 479 U.S. 157, 167 (1986) ("[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment."). Confessions are presumed involuntary, and the State bears the burden of proving voluntariness by a preponderance of the evidence. *State v. Hall*, 120 Ariz. 454, 456, 586 P.2d 1266, 1268 (1978). But "[a] prima facie case for admission of a confession is made when the officer testifies that the confession was obtained without threat, coercion or promises of immunity or a lesser penalty." *State v. Jerousek*, 121 Ariz. 420, 424, 590 P.2d 1366, 1370 (1979).

**¶5** Here, the record fully supports the trial court's finding that Lucas's statements were voluntary. First, Lucas voluntarily submitted to the interview. Second, before being interviewed, Lucas was informed of his *Miranda*[1] rights. Finally, the detective who conducted the interview testified that he neither made promises nor offered any inducements to obtain Lucas's confession.

**¶6** Lucas contends that the detective made several remarks that should have rendered his confession involuntary, including: (1) "[A]s long as you tell me the truth and tell me what happened, I'm willing to put in my report, the last paragraph of my report will read that Mark Anthony Lucas told me the truth about what happened. And that goes a long way with the County Attorney's office."; (2) "Okay, if you sit and bullshit me, then we are going to have a problem, and it won't be good."; and (3) "But you're going to make a mistake if you sit here and try to jack me around, because I can—I can be one of two things to you. I can be your best friend, Lucas, or I will be your worst nightmare; what would you rather have?"None of these statements were improper.

**¶7** The first statement was not a promise of leniency. The detective merely indicated that he would inform the prosecutor about Lucas's cooperation. "Police may offer to tell the prosecutor about the defendant's cooperation and suggest that such cooperation may increase the likelihood of a more lenient sentence." *State v. Strayhand*, 184 Ariz. 571, 579, 911 P.2d 577, 585 (App. 1995). "So long as the promise is 'couched in terms of mere possibility or an opinion,' the promise is generally not sufficient to render a confession involuntary." *Id.*

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

¶8        Nor can the other two statements be viewed as unequivocal threats that coerced Lucas's confession. Neither statement was specifically directed at forcing Lucas to confess; rather, both statements informed him that it would not be to his advantage to lie. Having been advised of his *Miranda* rights, Lucas knew that he did not have to speak to the detective. These statements made clear to Lucas that lying would only make things worse. "Mere advice that it would be better to be truthful is a permissible interrogation tactic." *Blakely*, 204 Ariz. at 436 ¶ 29, 65 P.3d at 84; *see also State v. Amaya-Ruiz*, 166 Ariz. 152, 165, 800 P.2d 1260, 1273 (1990) ("The statements made during the defendant's interview were . . . mere exhortations to tell the truth."). Whether a specific statement coerced a confession is an issue of fact for the trial court. *Hall*, 120 Ariz. at 457, 586 P.2d at 1269. Lucas, who did not testify at the suppression hearing, presented no evidence that any of the detective's statements were the reason for his confession. Further, the audio/video recording of the interview showed that the detective was not overbearing and that Lucas was quite talkative. Under these circumstances, the trial court did not err in denying Lucas's motion to suppress his statements.

### B.        Medical Records

¶9        Lucas argues that the trial court erred in denying his motion to compel disclosure of the victim's medical records, which he claims deprived him of the opportunity to effectively cross-examine the victim and his grandmother. We review a trial court's ruling on a discovery request for an abuse of discretion. *State v. Conner*, 215 Ariz. 553, 557 ¶ 6, 161 P.3d 596, 600 (App. 2007). To the extent Lucas raises a constitutional claim, however, our review is de novo. *Id.*

¶10       Lucas claims that the victim's medical records might be relevant to the victim's credibility because the victim had a variety of mental health deficits. As a general rule, the Victims' Bill of Rights and the physician-patient privilege both protect a victim's medical records. *See* Ariz. Const., art. II, § 2.1 (5); A.R.S. § 13-4062(4). When the physician-patient privilege has been waived, a defendant may be entitled to an in camera review of medical records to determine if the defendant's due process rights would mandate discovery notwithstanding the provisions of the Victims' Bill of Rights. *Connor*, 215 Ariz. at 558 ¶ 10, 161 P.3d at 601.

¶11       Here, as in *Connor*, Lucas fails to present a "sufficiently specific basis to require that the victim provide medical records to the trial court for an *in camera* review." *Id.* at ¶ 11. "[F]or the most part, 'confrontation clause rights are trial rights that do not afford criminal

defendants a right to pretrial discovery.'" *Id.* at 562 ¶ 28, 161 P.3d at 605 (quoting *State ex rel. Romley v. Superior Court (Roper)*, 172 Ariz. 232, 240, 836 P.2d 445, 453 (App. 1992)). Lucas has not shown that the victim waived his physician-patient privilege. Nor does Lucas's unsupported speculation that the victim's medical records affected the truth of victim's testimony demonstrate that the records were necessary to cross-examine the victim and his grandmother.

¶12 Lucas asserts in his reply brief that the State's failure to address the non-disclosure of the school records should be treated as a confession of error. Lucas's request for the school records, however, was limited to records relating to the victim's mental health history. Lucas does not argue that the victim's school records contain any mental health history records or that such records would not be likewise privileged and protected from disclosure. On this record, the trial court did not err in declining to order disclosure of the victim's medical records regardless of their location.

### C. Testimony Concerning Victim's Credibility

¶13 Lucas contends the trial court erred in allowing the victim's grandmother to opine about the victim's credibility. At issue is the grandmother's cross-examination and redirect testimony that she had never known the victim to falsely accuse anyone of any kind of crime and that "because of his disability, he is the type that will just tell you everything upon meeting you." Lucas argues that this testimony violates the prohibition against testimony on the veracity of a statement by another witness. *See, e.g., State v. Moran*, 151 Ariz. 378, 382, 728 P.2d 248, 252 (1986) (holding error to permit experts to testify that they believed victim was telling the truth); *State v. Reimer*, 189 Ariz. 239, 241, 941 P.2d 912, 914 (App. 1997) (holding error to permit police officer to opine that witness was truthful in describing defendant's conduct in out-of-court statement). We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *State v. Aguilar*, 209 Ariz. 40, 49 ¶ 29, 97 P.3d 865, 874 (2004).

¶14 Opinion testimony regarding the truthfulness of a witness's statement by another witness is not permitted because it is "nothing more than advice to jurors on how to decide the case." *Moran*, 151 Ariz. at 383, 728 P.2d at 253. Contrary to Lucas's contention, however, the victim's grandmother did not offer an opinion on the truthfulness of any particular statements by her grandchild.

¶15 The testimony Lucas challenges was elicited by the prosecutor during redirect examination of the grandmother in response to matters that defense counsel raised during cross-examination. Specifically, the grandmother admitted that the victim was not always truthful with her. During redirect, the prosecutor simply clarified the nature of the untruthful statements the victim may have told the grandmother and had her describe his nature in general. To the extent the testimony could be considered an opinion rather than merely descriptive in nature, it fell well within the type of opinion testimony regarding a witness's character for truthfulness allowed by the Rules of Evidence. *See* Ariz. R. Evid. 608(a) ("A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked."). The trial court did not abuse its discretion in overruling Lucas's objections to the challenged testimony.

### D. Motion for New trial

¶16 Lucas argues that the trial court erred in denying his motion for new trial. The motion was based on the State's disclosure of police reports concerning the victim after the conclusion of trial. The reports detailed that the victim had thirteen contacts with the police, including reports of alleged offenses committed against the victim; reports of incidents in which the victim was alleged to have committed an offense; and a report concerning the victim and his grandmother's eviction from their apartment after Lucas was charged in the instant case. Lucas asserts that the reports constituted exculpatory impeachment material that the State was required to disclose pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). The trial court denied Lucas's motion for new trial, finding that the contacts referenced in the police reports would not have been admissible at trial, and that even if some of the incidents had been admissible, they would not have changed the verdict.

¶17 We review a trial court's denial of a motion for new trial for an abuse of discretion. *Hoskins*, 199 Ariz. at 142 ¶ 53, 14 P.3d at 1012. "Motions for new trial are disfavored and should be granted with great caution." *State v. Rankovich*, 159 Ariz. 116, 121, 765 P.2d 518, 523 (1988). Thus, we will reverse a denial of a motion for new trial "only when there is an affirmative showing that the trial court abused its discretion and acted arbitrarily." *State v. Mincey*, 141 Ariz. 425, 432, 687 P.2d 1180, 1187 (1984).

**¶18** In *Brady*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109–10 (1976). Evidence is considered "material" for purposes of *Brady* only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

**¶19** As Lucas acknowledged in his motion for new trial, the late disclosed information would have been relevant solely for impeachment purposes. Lucas argues that the victim's prior contacts with the police could have been used to attack his credibility. The trial court, however, has discretion under Arizona Rule of Evidence 608(b) whether to permit a defendant to attack a witness's credibility by inquiring on cross-examination into specific instances of conduct. *State v. Murray*, 184 Ariz. 9, 30, 906 P.2d 542, 563 (1995). The trial court also has considerable discretion to exclude relevant evidence if "its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Ariz. R. Evid. 403; *see also State v. Harrison*, 195 Ariz. 28, 33 ¶ 21, 985 P.2d 513, 518 (App. 1998) (holding that because "the trial court is in the best position to balance the probative value of challenged evidence against its potential for unfair prejudice . . . it has broad discretion in deciding the admissibility."). Given these standards, the trial court did not abuse its discretion in finding that the various incidents Lucas indicates he would have sought to raise in cross-examination would have been inadmissible.

**¶20** Moreover, as the trial court further noted, the issue at trial centered on the jury's squaring Lucas's trial testimony with his recorded confession to the police. Any evidence of the victim's prior inconsistent statements about other unrelated incidents would have had minimal impact on the outcome of the trial because the only real issue was which of Lucas's contradictory statements was the truth. Under these circumstances, the trial court did not abuse its discretion in finding that the information in the police reports concerning the victim would not have changed the outcome of the trial if it had been made available to Lucas before trial.

¶21 As part of his challenge to the denial of his motion for new trial, Lucas asserts that the trial court erred in not holding an evidentiary hearing on the motion. But the trial court could have properly concluded that a hearing was unnecessary to decide the motion. The trial court heard the evidence presented at trial and had found that the non-disclosed police reports did not contain matters that would have been admissible, and that even if some portion would have been admissible for impeachment purposes, no reasonable probability exists that it would have changed the verdicts. A hearing would not have helped the trial court resolve the motion.

### E. Convictions on Lesser-Included Offenses

¶22 Lucas contends that his convictions for both transfer of dangerous drugs and involving or using a minor in a drug transaction are based on the same conduct and violate the prohibition against double jeopardy because the first is a lesser-included offense of the latter. We review alleged double jeopardy violations de novo. *State v. Braidick*, 231 Ariz. 357, 359 ¶ 6, 295 P.3d 455, 457 (App. 2013). The State confesses error, and we agree.

¶23 The federal and state double jeopardy clauses provide that a person may not be twice put in jeopardy for the same offense. U.S. Const. amend V; Ariz. Const. art II, § 10; *State v. Eagle*, 196 Ariz. 188, 190 ¶ 5, 994 P.2d 395, 397 (2000). Conviction on both a greater and lesser offense violates double jeopardy rights. *State v. Ortega*, 220 Ariz. 320, 328 ¶ 25, 206 P.3d 769, 777 (App. 2008). "[A] crime is a lesser[-]included offense if the crime is composed solely of some but not all of the elements of the greater crime so that it is impossible to commit the greater offense without committing the lesser." *State v. Kamai*, 184 Ariz. 620, 622, 911 P.2d 626, 628 (App. 1995). As charged in this case, the crime of transfer of a dangerous drug is a lesser-included offense of the crime of involving or using a minor in a drug transaction as the latter consists of all the elements of transfer of a dangerous drug with the one additional element that the transfer be to a minor. A.R.S. §§ 13-3407(A)(7), -3409(A)(2). Thus, Lucas's convictions for the greater and lesser drug offenses with respect to each of the two incidents violate the prohibition against double jeopardy.

¶24 When a defendant has been convicted and sentenced for two offenses in violation of double jeopardy, the remedy is to vacate the lesser conviction. *State v. Jones*, 185 Ariz. 403, 407, 916 P.2d 1119, 1123 (App. 1995). Both transfer of a dangerous drug and involving or using a minor in a drug transaction are class 2 felonies, A.R.S. §§ 13-3407(B)(7), -3409(B).

The trial court, however, imposed four-year prison terms on the convictions for involving or using a minor in a drug transaction and five-year prison terms on the convictions for transfer of dangerous drugs. Consequently, we consider the convictions for involving or using a minor in a drug transaction the lesser offenses in the instant case. *Jones*, 185 Ariz. at 407-08, 916 Ariz. at 1123-24. We therefore vacate the convictions on counts 5 and 6 for involving or using a minor in a drug transaction and vacate the resulting four-year prison sentences imposed on counts 5 and 6.

## CONCLUSION

**¶25**          For the foregoing reasons, we vacate the convictions and the resulting sentences on counts 5 and 6 for involving or using a minor in a drug transaction.  We affirm Lucas's other convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: mjt